IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH YBARRA, | CASE NO. 4:22-CV-01153-SL |
| Petitioner, | JUDGE SARA LIOI |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN GARZA, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

**PROCEDURAL HISTORY**

On June 29, 2022, while in federal custody at FCI Elkton in Lisbon, Ohio,[1] Petitioner Jeremiah Ybarra filed a *pro se* Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241. (ECF #1). On August 22, 2022, Mr. Ybarra filed a request for leave to file interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure. (ECF #4). On September 23, 2022, the matter was referred to me for general pretrial supervision and preparation of a Report and Recommendation. (Non-document entry of Sept. 23, 2022). On November 25, 2022, Respondent (hereinafter, the government) filed its Answer/Return of Writ, including two declarations from

---

[1] When Mr. Ybarra filed his Petition, he resided at FCI Elkton, within the Northern District of Ohio. Mr. Ybarra was subsequently transferred and currently resides at FCI La Tuna in Anthony, Texas. Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Jan. 20, 2023). The Sixth Circuit has stated that jurisdiction over a § 2241 petition is determined at the time the proceeding is filed and that the subsequent transfer of the prisoner will not defeat habeas jurisdiction. *White v. Lamanna*, 42 Fed. App'x 670, 671 (6th Cir. 2002).

1

employees of the Federal Bureau of Prisons (BOP). (ECF #9). Mr. Ybarra filed an objection to the Answer/Return of Writ. (ECF #10).

For the reasons that follow, I recommend the District Court **DENY** the request for leave to file interrogatories and **DISMISS** Mr. Ybarra's Petition without prejudice.

### BACKGROUND

On September 8, 2017, Mr. Ybarra was convicted in the Western District of Texas of Aiding and Abetting Possession with the Intent to Distribute Methamphetamine and was found in violation of Supervised Release for a 2010 federal conviction. (Dec. of Eva Baker-Dykstra, ECF #9-1, PageID 46-47; Dec. of Kristy Cole, ECF #9-2, PageID 108).[2] Mr. Ybarra is serving an aggregate term of 126 months incarceration and, assuming he receives all credit currently available to him, his projected release date is December 20, 2025. (ECF #9-1 at PageID 47).

Mr. Ybarra asserts the government and administrative staff at FCI Elkton have not given him credits to which he is entitled under the First Step Act of 2018 (FSA). (*Id.* at PageID 1). Mr. Ybarra requests this Court order the government to award him credits as required under the Act and give due consideration to his request to be released to home confinement under the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act). (*Id.* at PageID 4).

---

[2] Eva Baker-Dykstra is a Paralegal Specialist for the BOP. (ECF #9-1 at PageID 46). She has access to most records maintained in the ordinary course of business, including records maintained in the BOP database known as Sentry that tracks information about federal prisoners, including release dates and the status of administrative remedy requests filed by federal prisoners. (*Id.*). She is familiar with the BOP's administrative remedy process set forth in 28 C.F.R. §§ 542.10, *et seq.* (*Id.*).
    Kristy Cole is the Case Management Coordinator at FCI Elkton. (ECF #9-2 at PageID 107). She has access to most records maintained in the ordinary course of business, including records maintained in Sentry. (*Id.* at PageID 107-08).

Mr. Ybarra claims the staff at Elkton FCI have hindered his ability to exhaust his administrative remedies. (ECF #10 at PageID 131).

To his Petition, Mr. Ybarra attached four Request to Staff emails. In the first email, dated May 25, 2022, Mr. Ybarra requested information about the status of his CARES Act request and questioned why he was still, since 2020, considered a medium recidivism risk. (ECF #1-1 at PageID 9). On May 31, 2022, Mr. Ybarra sent another Request to Staff email with the same issues: the status of his CARES Act request and why has his recidivism score had not changed. (*Id.* at PageID 8). On June 1, 2022, Mr. Ybarra sent a request to the warden for his FSA credits. (*Id.* at PageID 7). That same day, Mr. Ybarra sent another Request to Staff email requesting that his Unit Team be told to stop denying him access to the BP Forms necessary to initiate his administrative remedies. (*Id.* at PageID 6). On June 8, 2022, the warden responded to Mr. Ybarra's request for FSA credits, stating those credits are not calculated at the local level and he will be notified once his sentence computation is updated. (*Id.* at PageID 5).

Mr. Ybarra attached four additional Request to Staff emails to his response to the government's Answer/Return of Writ, all of which relate to his request to be transferred to home confinement under the CARES Act. (ECF #10-1 at PageID 135-38).

LAW AND ANALYSIS

The government asserts Mr. Ybarra has failed to exhaust his administrative remedies and therefore cannot petition for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF #9 at PageID 38). In addition, the government contends Mr. Ybarra is not yet eligible to receive earned time credit making his claim under the First Step Act not ripe. (*Id.* at PageID 39, 41). The government

3

does not address Mr. Ybarra's request for consideration to be placed on home confinement under the CARES Act.

**I.      Discovery in Habeas Proceedings**

Habeas petitioners do not have an automatic right to discovery. *See Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (citing *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Instead, discovery in a habeas proceeding is governed by the Rules Governing Section 2254 Cases. The Rules are applicable to habeas petitions under § 2241. Rule 1(b). Under Rule 6, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a); *see also Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding . . . ."). "A party requesting discovery must provide reasons for the request," and "must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6(b). Rule 6 embodies the principle that the court must provide discovery in a habeas proceeding only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).

Even more, "[a] district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6." *Stanford*, 266 F.3d at 460; *Byrd v. Collins*, 209 F.3d 486, 515-16 (6th Cir. 2000).

"[B]ald assertions" or "conclusory allegations" do not show good cause. *Id.* Instead, a petitioner must show the requested discovery is materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief."

4

*Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004) (internal quotation marks omitted). The burden of demonstrating materiality of the information requested is on the moving party. *Stanford*, 266 F.3d at 460.

Here, Mr. Ybarra has not provided any reasons for the requested discovery and therefore has not made a fact-specific showing of good cause as required under Rule 6(b). In any event, the Petition is capable of adjudication without the need for discovery or a hearing.

II.     First Step Act of 2018

    A.     General Provisions of the FSA

Under the FSA, Pub. L. No. 115-015, 132 Stat. 015 (2018), the BOP may grant up to 54 days of earned credits for every year of sentence imposed, rather than for every year of the sentence served. *See* 18 U.S.C. § 3624(b). The FSA additionally directed the Attorney General to develop a new "risk and needs assessment system" (the System) to provide appropriate programming for prisoners in an effort to reduce the risk of recidivism. *See* 18 U.S.C. § 3632. The System is used to determine each prisoner's recidivism risk; assess the prisoner's risk of violent or serious misconduct; determine the type and amount of evidence-based recidivism reduction (EBRR) programming appropriate for each prisoner; periodically reassess the recidivism risk of each prisoner; reassign the prisoner to the appropriate EBRR programs or productive activities (PA) based on the revised determination; determine when to provide incentives and rewards for successful participation in EBRR or PA programs; and to determine when a prisoner is ready to transfer into prerelease custody or supervised release. *Id.* at §§ 3632(a)(1)-(7). The System provides incentives and rewards for prisoners to participate in EBBR programs, including additional time credits to be applied toward time in prerelease custody or supervised release, allowing eligible

5

prisoners to be placed on prerelease custody earlier than previously allowed. *See id.* at § 3632(d)(4). The Attorney General developed and publicly released the System on July 19, 2019, and last updated it in August 2020. *See* U.S. Dept. of Justice, The First Step Act of 2018: Risk and Needs Assessment System (July 19, 2019), available at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last accessed January 20, 2023); *see also* August 2020 Update, available at https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment.pdf (last accessed January 20, 2023). The Attorney General then had until January 15, 2022 to implement the program fully. *See* 18 U.S.C. § 3621(h)(1)-(2). The BOP could, but was not required to, begin to expand its EBRR and PA programs as soon as the date of enactment in 2018. *Id.* at § 3621(h)(4).

Prisoners who successfully complete EBRR programming or PA receive ten days of time credited to their sentence for every thirty days of successful participation. *Id.* at § 3632(d)(4)(A)(i). Prisoners who are given minimum or low risk assessments over two consecutive assessments and who have not increased their risk receive an additional five days of credits for every thirty days of successful participation in EBRR programming or PA. *Id.* at § 3632(d)(4)(A)(ii). Prisoners do not earn time credits for successful completion of an EBRR program completed prior to the enactment of the FSA, December 21, 2018. *Id.* at § 3632(d)(4)(B)(i). The BOP is responsible for awarding credits to prisoners. 28 C.F.R. § 523.20(a). Under COVID-19 pandemic mitigation strategies, the BOP has had to limit capacity in programs to promote social distancing. *See* First Step Act Annual Report, April 2022, p. 35, available at https://www.bop.gov/inmates/fsa/docs/First-Step-Act-Annual-Report-April-2022.pdf (last accessed January 20, 2023).

Risk reassessments are performed not less often than annually, and more frequently for a prisoner determined to be medium or high risk and who has less than five years until his projected release date. *Id.* at § 3632(d)(5). If the reassessment shows the prisoner's risk for recidivating or specific needs have changed, the BOP must update the determination and reassign the prisoner to appropriate EBRR or PA based on those changes. *Id.* A prisoner's risk assessment is determined through the administration of the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN). *See* PATTERN Risk Assessment, available at https://www.bop.gov/inmates/fsa/pattern.jsp (last accessed January 20, 2023).

B. **Mr. Ybarra failed to exhaust administrative remedies**

Under § 2241, federal prisoners must exhaust available administrative remedies before filing a petition for writ of habeas corpus. *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013). A federal prisoner cannot simply fail to use the administrative procedures or abandon the process before completion and claim that he has exhausted his remedies. *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997). A federal prisoner's failure to exhaust may be excused if administrative remedies are not reasonably available, but the prisoner must show he made "some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel Cnty, Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (citations omitted).

The BOP's Administrative Remedy Program, set forth in 28 C.F.R. §§ 542.10, *et seq.*, allows federal prisoners to seek formal review of an issue relating to their confinement. *Id.* at § 542.10(a). To seek formal review, the prisoner must submit a formal written Administrative Remedy Request (Form BP-9) within twenty days on which the basis for the Request occurred. *Id.*

7

at § 542.14(a). If the prisoner is not satisfied with the Warden's response to his Request, the prisoner may submit an Appeal (Form BP-10) to the appropriate Regional Director within twenty days of the date the Warden signed the response. *Id.* at § 542.15(a). If not satisfied with the Regional Director's response, the prisoner may submit an Appeal (Form BP-11) to the General Counsel within thirty days of the date the Regional Director signed the response. *Id.* The Warden must respond to a Request within twenty days; the Regional Director must respond to an Appeal within thirty days; and the General Counsel must respond to an Appeal within forty days. *Id.* at § 542.18. If the prisoner does not receive a response within the time allotted, the prisoner may consider the absence of a response to be a denial at that level. *Id.* Upon completion of this process, the prisoner has exhausted his administrative remedies.

According to records maintained in Sentry, Mr. Ybarra filed a request for administrative remedy concerning EBRR programming and his earned time credit under the FSA on January 18, 2022. (ECF #9-1 at PageID 102). Mr. Ybarra withdrew that request on January 19, 2022. (*Id.*). He has not filed any more requests seeking application of FSA credits. On April 29, 2022, Mr. Ybarra was reassessed and deemed a medium level recidivism risk. (ECF #9-2 at PageID 121). On June 9, 2022, Mr. Ybarra filed a request for administrative remedy that his recidivism risk level be changed to low. (ECF #9-1 at PageID 104). On July 7, 2022, Mr. Ybarra's request was denied. (*Id.*). He appealed the denial to the Northeast Regional Office. (*Id.* at PageID 105). On October 18, 2022, Mr. Ybarra was deemed a low-level recidivism risk. (ECF #9-2 at PageID 121).

In relation to his request for earned time credits under the FSA, Mr. Ybarra has failed to exhaust administrative remedies. He withdrew his request the day after he made it and has not attempted to re-initiate the administrative process on the issue.

Mr. Ybarra asserts he has been denied the use of the administrative remedy process. (ECF #1 at PageID 2). To his petition, Mr. Ybarra attached a copy of an email, dated June 1, 2022, to a prison employee complaining that his Unit Team was refusing to provide him with requested BP Forms to start the administrative remedy process. (ECF #1-1 at PageID 6). Records maintained in Sentry show that Mr. Ybarra was able to initiate the administrative remedy process when alleging staff misconduct on May 25, 2022; when appealing the determination of his medium recidivism risk score to the Northeast Regional Office on June 9, 2022; when requesting home confinement under the CARES Act on August 26, 2022; and when requesting surgery for carpal tunnel syndrome on September 15, 2022. (ECF #9-1 at PageID 104-060). From this, it is evident that Mr. Ybarra has used the administrative remedy process, contradicting his claim that he has been refused access to the necessary forms to initiate or complete the process.

Based on the foregoing, I conclude Mr. Ybarra has failed to exhaust the administrative remedies as it relates to his request for credits under the FSA.

    **C.    Mr. Ybarra is not yet entitled to have FSA time credit applied toward prerelease custody**

Even if Mr. Ybarra exhausted his administrative remedies, he is not yet eligible to apply earned time credits towards prerelease custody under the FSA on the record presented. The question of his eligibility begins and ends with his recidivism risk level under the System, described above. Under 28 C.F.R. § 523.44, the BOP may apply earned FSA credits toward prerelease custody or early transfer to supervised release only when an eligible inmate has satisfied certain criteria. First, the eligible inmate must have earned FSA credits in an amount that is equal to the remainder of the inmate's imposed prison term, shown through periodic risk assessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk during

9

the term of imprisonment, and had the remainder of his imposed term of imprisonment computed under applicable law. *Id.* at § 523.44(b). The BOP may apply earned FSA credits toward prerelease custody only when an eligible inmate satisfies the additional following criteria:

> The inmate has:
>
> (1) Maintained a minimum or low recidivism risk through his last two risk and needs assessments; or
>
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
>
>> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
>>
>> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>>
>> (iii) The prisoner is unlikely to recidivate.

*Id.* at § 523.44(c). On October 18, 2022, Mr. Ybarra was downgraded from a medium recidivism risk to a low recidivism risk level. (ECF #9-2 at PageID 121). He has not presented any evidence showing that he has been scored at minimum or low recidivism risk during a second risk and need assessment. As a result, it appears that he does not currently meet the criteria to apply any FSA credits to prerelease custody.

## II. CARES Act

Mr. Ybarra next requests that this Court order the warden and his administrative staff to consider his request to be released to home confinement under the CARES Act. Contrary to Mr. Ybarra's assertion that his request has not been considered, the BOP did review his request for transfer to home confinement. On August 26, 2022, Mr. Ybarra made the request, which the BOP denied on September 23, 2022. (ECF #9-1 at PageID 105). Mr. Ybarra did not appeal the denial.

The BOP has the sole authority to determine the place of an inmate's confinement. 18 U.S.C. § 3621(b). The BOP also has the authority to permit an inmate to serve the end of a term of incarceration in a community correctional facility or residential reentry center (RRC), such as a halfway house, for a period not to exceed twelve months, or to place an inmate on home confinement for the shorter of ten percent of the term of imprisonment or six months. *Id.* at §§ 3624(c)(1), (2). This authority was expanded under § 12003(b)(2) of the CARES Act, which provides that "[d]uring the covered emergency period . . . the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." CARES Act, Pub. L. 116-136, Div. B., Title II, § 12003(b)(2).

The BOP, however, still has the sole authority to decide whether home confinement under the CARES Act is appropriate. *See Woods v. Bur. of Prisons*, No. 0:20-115-KKC, 2020 WL 5919671, at *2 (E.D. Ky. Oct. 6, 2020). "While the CARES Act allows the Bureau of Prisons to 'lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement,' it does not give courts the authority to grant home confinement requests." *Id.* (quoting Pub. L. 116, 134 Stat. 281, 516, § 12003(b)(2)); *see also United States v. Ralston*, No. 3:13-CR-105-CRS, 2020 WL 2600976, at *2 (W.D. Ky. May 21, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement."); *United States v. Black*, No. 2:12-CR-263-3, 2020 WL 2213892, at *1 (S.D. Ohio May 7, 2020) (district court does not have the authority to dictate home confinement

11

placements to the BOP under the CARES Act). This Court therefore has no authority to order the BOP to consider Petitioner for home confinement under the CARES Act.

## CONCLUSION AND RECOMMENDATION

In relation to his claim under the First Step Act of 2018, Mr. Ybarra has failed to exhaust his administrative remedies; in any event, he does not meet the criteria to apply his credits and is, therefore, not yet entitled to the relief he seeks. As to his request under the CARES Act, the District Court does not have authority to grant the relief he seeks. I recommend Mr. Ybarra's motion for leave to file interrogatories be **DENIED** and his Petition be **DISMISSED.**

Dated: January 23, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.*, **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific**

objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).